**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-01192-BNB

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

AUG 23 2013

JEFFREY P. COLWELL
CLERK

DAVID GUY BRYAN
_______________________________, Plaintiff,

v.

JOHN HICKENLOOPER, et. al. Governor Colorado,
RICK RAEMISCH Executive Director, Colorado Department of Corrections et .al.
LARRY REID, Director of Prisons CDOC
RAE TIMME, Warden ,Colorado Territorial Correctional Facilities
RENEE JORDAN , Clinical Services and/or Current Director.
MEGHAN REED, Acting AIC/ Legal Services CDOC
AMY COSNER, Acting AIC/ Legal Services CDOC
ADRIENNE JACOBSON/ AIC Legal Services CDOC
DAVE TESSIER, Health Services Administrator CTCF
KELLY WASCO, Current Clinical Services Director.
JENNIFER CASTNER Medical Clinic CTCF
BURL MCCULLAR, Sex Offender Treatment Manage/ Legal Services CDOC
ANTHONY A. DECESARO Step III grievance officer CDOC
LANCE MIKLICH, Programs Director CTCF
TIM HAND, Director of Parole (CDOC)
MATT WINDEN, Faith and Citizen Programs Manager et. al.
DARIL R. PROFFET, Faith and Citizen Programs

_______________________________, Defendants.

---

## AMENDED COMPLAINT

---

Comes now David Guy Bryan acting pro sa

## A. PARTIES

1. **David Guy Bryan,** CTCF: P.O. Box 1010; Canon City, CO 81215-1010. (Plaintiff)
2. **John Hickenlooper,** Governor; acting under color of state law. As Governor, he is responsible for appointing the executive director of the Colorado Department of Corrections (CDOC)

ORIGINAL

according to 17-1-101 and furthermore is responsible for the overall administration of the laws of the State. Mr. Hickenlooper is sued in his official and individual capacities.

3. Rick Raemisch (CDOC) 2862 So. Circle Drive, Suite 148, Colorado Springs, CO. defendant is acting under color of state law and is sued in his official and individual capacities. He is the Executive Director of all (CDOC) and is responsible for the daily running of the entire state prison system. Including decisions regarding programs, staff in general, committees, policies, and Administrative Regulations (AR's).
4. **Larry Reid** is the Director of prisons 2862 So. Circle Drive, Suite 148, Colorado Springs CO 80906-4195 and was acting under color of state law at the time the claims(s) arose and is sued in his official and individual capacities. He oversees the general operations of both CTCF and FCF including security transport, along with other CDOC facilities.
5. **Ray Timme** is the Warden of (CTCF P.O. Box 1010 Canon City, CO 81215-1010. She was acting warden at the time the claims alleged in this complaint arose, and was acting under color of state law. She is accountable for the operation of the facilities and as such is accountable for the decisions of the staff, the safety /well being of the Plaintiff, policies, and Administrative Regulations (AR's).
6. **Renee Jordan,** is the past Administrator of (CDOC) Clinical Services 2862 So. Circle Drive, Suite 148, Colorado Springs CO 80906-4195 She was acting under color of state law and is sued in her official and individual capacities. She is accountable for the policies, procedures, operations, and practices of the inmate healthcare systems.
7. **Maghan Reed,** is Acting AIC and is in Legal Services of (CDOC). 2862 S. Circle Dr. Suite 148, Colorado Springs CO 80906-4195. She was acting under color of state law and is sued in her official and individual capacities. She is responsible for implementing all regulations and requirements of the (MONTEZ) Remedial Plan and all (AR's).
8. **Amy Cosner,** is Acting AIC and is in Legal Services of (CDOC). 2862 S. Circle Dr. Suite 148, Colorado Springs CO 80906-4195. At the time of the claims(s) alleged in this complaint arose, the defendant was acting under color of state law. She was acting under color of state law and is sued in her official and individual capacities. She is responsible for implementing all regulations and requirements of the (MONTEZ) Remedial Plan and all (AR's).
9. **Adrienne Jacobson,** is Acting AIC and is in Legal Services of (CDOC). 2862 S. Circle Dr. Suite 148, Colorado Springs CO 80906-4195. At the time of the claims(s) alleged in this complaint arose, the defendant was acting under color of state law. She was acting under color of state law and is sued in her official and individual capacities. She is responsible for

ORIGINAL

implementing all regulations and requirements of the (MONTEZ) Remedial Plan and all (AR's).

10. **David Tessier,** is in charge of Health Services Administrator (HSA) at (CTCF) P.O. Box 1010, Canon City, CO 81215-1010 . At the time of the claims(s) alleged complaint arose, the defendant was acting under color of state law. He is sued in his official and individual capacities. As head of the healthcare at (CTCF) he oversees the daily functions of the Plaintiff's healthcare, including, but not limited to add-hearing to following the ADA Remedial Plan Accommodations/AR's, following Dr.'s and nurse practitioners orders, assuring orders for medical equipment, medical supplies, outside clinics and hospitalization.
11. **Kelly Wasco** is the head of Health Services Administration of (CDOC) Clinical Services 2862 So. Circle Drive, Suite 148, Colorado Springs CO 80906-4195 At the time of the claims(s) alleged complaint arose, the defendant was acting under color of state law. He is sued in his official and individual capacities. As head of the healthcare at (CTCF) he oversees the daily functions of the Plaintiff's healthcare, including, but not limited to add-hearing to following the ADA Remedial Plan Accommodations/AR's, following Dr.'s and nurse practitioners orders, assuring orders for medical equipment, medical supplies, outside clinics and hospitalization.
12. **Jennifer Castner,** is a nurse III at (CTCF) P.O. Box 1010, Canon City, CO 81215-1010 . At the time of the claims(s) alleged complaint arose, the defendant was acting under color of state law. She is sued in official and individual capacities. As head of the healthcare at (CTCF)
13. **Burl McCular,** is in charge of the Sex Offender Treatment Program (SOTP) for CDOC. He is located at CCCF, P.O. Box 300, Canon City, CO 81215-300. At the time of the claims(s) alleged complaint arose, the defendant was acting under color of state law. He is sued in his official and individual capacities. He determines and interprets all aspects of operations of the SOTP program's/ procedures, policies, as related to the Plaintiff.
14. **Anthony A. DeCesaro,** Step III Grievance Officer CDOC. 2862 So. Circle Drive, Suite 148, Colorado Springs CO 80906-4195 At the time of the claims(s) alleged complaint arose, the defendant was acting under color of state law. He is sued in his official and individual capacities as the Step III Grievance Officer for the CDOC and has the responsibility of determining the facts presented in the grievance process, and not properly investigating issues.
15. **Lance Miklich** is the Programs Director at CTCF P. O. Box 1010, Canon City, Co 81215-1010. At the time of the claims(s) alleged complaint arose, the defendant was acting under color of state law. He is sued in his official and individual capacities. He also is the director of religious programs among other responsibilities. He determines and interprets all aspects of operations regarding religious programs and related activities at CTCF.

ORIGINAL

16. **Tim Hand** is the Director of Parole for CDOC At the time the claims alleged in this complaint arose the defendant was acting under color of state law. He is sued in his official and individual capacities. He is responsible for the operation of the entire Parole Department and is accountable for the policies and actions of that department.
17. **Matt Winden**, is the Southern Regional Director for Faith and Citizen Programs (CDOC) 2862 So. Circle Drive, Suite 148, Colorado Springs, CO 80906-4195. At the time of the claims(s) alleged complaint arose, the defendant was acting under color of state law. He is sued in his official and individual capacities. He is responsible for setting religious policies and AR's as related to the Plaintiff.
18. **Daril R. Proffet,** is the Director in charge of Faith and Citizen Programs, (CDOC) 2862 So. Circle Drive, Suite 148, Colorado Springs, CO 80906-4195. At the time of the claims(s) alleged complaint arose, the defendant was acting under color of state law. He is sued in his official and individual capacities. He is responsible for setting religious policies and AR's as related to the Plaintiff.

**B. JURISDICTION**

1. I assert jurisdiction over my civil rights claim(s) pursuant to;

_X_ 28 U.S.C. 1343 and 42 U.S.C. 1983 (state Prisoners)

___ 28 U.S.C. 3131 and Livens v. Six unknown Named Agents of Fed. Bureau of narcotic 403 U.S. 388 (1917) (federal Prisoners).

**C. NATURE OF THE CASE.**

Plaintiff has four separate areas of contingency:

1. Issues arising from the Montez class action case after 2004. Also, denied ADA Accommodations resulting in serious medical consequences including irreversible damage; pain and suffering. Issue arising from medical indifference and not following Dr.'s orders. Medical orders that were and continued to not be followed causing irreversible damage; pain and suffering.
2. Issues arising from CDOC Sex offender treatment program and parole. Sex-offender treatment programs are not provided in a fair and equal manner for disabled inmates who are on a determinant sentence which then effects plaintiffs ability to be advanced to a halfway house or be paroled.
3. Issues involving religious programs concerning the ability to practice The Roman Catholic religion to it's fullest extent.

ORIGINAL

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim(s). The additional pages regarding the case of action should be labeled "D. CAUSE OF ACTION."

Claim #1: Defendants showed "deliberate indifference" to plaintiff's serious medical needs that resulted in injury to plaintiff, which violated Plaintiff's rights and constituted "cruel and unusual punishments", and "due process", under the under the Eighth and Fourteenth Amendment's to the United States Constitution. A finding of deliberate indifference requires a showing that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Plaintiff went before the Special Master (MONTEZ 92-N-870) which determined Claimant is a disabled individual who is a member of the class. Under the Rehabilitation Act and the ADA, the term "disability" means "(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. §12102(2): 29 U.S.C. § 794(d); 29 U.S.C. § 705(9)(B). Plaintiff meets all these requirements of the forgoing isssues as deturmened by the Special Master of MONTEZ 92 N 870. 1. The legal standards applicable to this claim are derived from three sources: (a) the Remedial Plan; (b) the Rehabilitation [*7] Act, 29 U.S.C. § 794 *et seq.*, and (c) the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* Section 504 of the Rehabilitation Act of 1973, 29 U.S.B. §794(a), Provides in pertinent part: No otherwie qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any psrogram or activity receiving Federal financial assistance. Plaintiff is otherwise qualified to participate in the services, Programs and activities provided to inmates at the DOC facilities within the meaning of the Americians with Disabilities Act (hereinafter reffered to as the (ADA) 42 U.S.C. §12101 et seq. Plaintiff is otherwise qualified to participate in the services, programs and activities provided to inmates at the DOC facilities within the meaning of the Rehabilitation Act of 1973. The Colorado Department of Corrections receives and benefits from Federal financial assistence. See 29 U.S.C.A. §794. (See ATTACHMENT D.)

ORIGINAL

E. PREVIOUS LAWSUITS

Have you ever filled a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?
_X_ Yes ___ No(CHECK ONE). If your answer is "yes," complete the section of the form. If you have filed more than one lawsuit in the past, use extra paper to provide the necessary information of each additional lawsuit. The information about additional lawsuits should be labeled "E. PREVIOUS LAWSUITS."

1. Name(s) of defendant(s) in prior lawsuit: JESSY MONTEZ, DAVID BRYAN, GEORGE KARL, EUGENE GILPIN, JOHN ARMINTROUT, KENNETH GARCIA; as representatives of themselves and all others similarly situated in this class action.
2. Docket number raised in prior lawsuit: _92-N-870, Tenth District Court_
3. Claims raised in prior Lawsuit: _ADA_
4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?); This case has not been totally dismissed. However, the court has ruled that any new ADA suits be filed if involving DOC after 2004.
5. If the prior lawsuit was dismissed, when was it dismissed and why? _n/a_
6. Result(s) of any appeal in the prior lawsuit: Plaintiff DAVID BRYAN was instructed by Magistrate Judge Borchers to file a separate civil rights complaint 42 USC 1983 for ADA issues after 2004.ber and court name; 92-N-875 U.S. District Court

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined? _X_ Yes No (CHECK ONE)
2. Have you exhausted the available administrative remedies? Attach copies, if available. _X_ Yes ____ No (CHECK ONE) The Step 3 grievance officer has failed to respond to my grievances with a reasonable response or that the issue can't be grieved.

ORIGINAL

## G. REQUEST FOR RELIEF

State the relief you are requesting. If you need more space to complete this section, use extra paper. The additional requests for relief should be labeled "G. REQUEST FOR RELIEF".

WHEREFORE, Plaintiff will ask for:

That the Court adjudge and declare that the defendants have violated the constitutional and statutory rights of Plaintiff David Guy Bryan under color of state law.

That the Defendants adhere to all the ADA accommodations that were originally granted to Plaintiff as agreed to by the AIC according to the Accommodation Resolution at the time of the hearing conducted by Magistrate Judge Borchers in the MONTEZ suite.

Plaintiff is asking for compensatory and punitive damages for unnecessary pain and suffering as a result of not providing for ADA accommodations as originally granted to him, which resulted in severe physical and mental damage. Plaintiff will ask for a Court Order to release plaintiff to a halfway house or parole where he may receive SOTP rather than wait for unknown years of CDOC indecisive programing. Plaintiff will ask for a review of his past parole hearings and denial of placement within halfway house based on discrimination due to disabilities and unfair treatment. Plaintiff will ask for property replacement and privileges that were confiscated when moved from Fort Lyon Correctional to Territorial Correctional Facilities and compensation for inappropriate transport.

Plaintiff will ask that his Catholic faith group be granted all faith practices and customs normally used by the Catholic faith but are currently denied by Defendants. Plaintiff will further ask for Court expenses, compensatory and punitive compensation and/or any other monitory damages the Court deems appropriate.

ORIGINAL

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this Complaint, and that the information in this complaint is true and correct See 28 U.S.C.§ 1746; 18 U.S.C. § 1621.

Executed on August 20, 2013 Respectfully Submitted: David Bryan

## CERTIFICATE OF MAILING

I, **David Guy Bryan**, hereby certify that on August 21, 2013 I placed a true and correct copy of the foregoing *Civil Rights Complaint 42 USC 1983,* in the United States Mail, postage pre-paid for:

Gregory C. Langham, Clerk
United States District Court
for the District of Colorado
Alfred A. Arraj US Courthouse
901 19th Street
Denver, Colorado ~~80203~~ 80294

Office of the Attorney General
1525 Sherman Street
Denver, Colorado 80203

Signed David Bryan

ORIGINAL

## D. CAUSE OF ACTION

**(continued)**

Claim #1. Supporting facts:

The Plaintiff will be submitting well over Fifth (50) exhibits of: Grievances, Medical Records, Letters, and Documents. Following 15 hours of testimony before Magistrate Judge Borchers, and the CDOC/AIC Cathy Holst, all agreed, that plaintiff (Bryan) was given an egg-crate mattress, and a wedge pillow along with a multitude of other accommodations including transport instructions and related orders for disability. The CDOC has ignored, or reneged on meany of the accommodations that were originally recognized as needed by the plaintiff according to ADA. (**a**: On April 28, 2011 Plaintiff's property was confiscated at FLCF and he was transported to CTCF with disregard to the MONTEZ Remedial Plan. He was improperly transported do to a bus that could not accommodate his disability; which resulted in him laying on the floor of the bus. Plaintiff is 6'5" tall and has a totally fused hip and partly fused knee. He suffered pain as a result of attempting to comply with the transport officers [names on record]. Upon arrival at CTCF he had more property confiscated in violation of the Remedial Plain. Section V, ¶4 (**b**. Plaintiff has an old decubitus ulcer (repaired by plastic surgery in 1973). AIC Defendants illegally discontinued his ADA accommodation for an egg-create mattress (needed for this condition, on May 10, 2011 , Plaintiff was issued a new mattress in May of 2011 apparently an oversight according to the altered accommodations. Plaintiff was automatically issued a new mattress by DOC every year for the past 20 years. Plaintiff was not issued another one after May of 2011. Starting on September 8, 2012 plaintiff requested a new egg-create mattress that compensates for a skin graph obtained in 1973. Plaintiff has ongoing orders by Doctors for this accommodation starting in 1993. Defendant Dave Tessier (HSA) /CTCF denied a new mattress and as a result plaintiff developed an open, painful and debilitating decubitus as a direct result of his actions. This action resulted in plaintiff needing to go to the Hospital two times as of this date and is scheduled for more hospital appointment. So far the decubitus continues not to heal. The defendant's conduct demonstrate deliberate indifference and continues to ignore Doctors Orders and the original accommodations according to the agreed MONTEZ accommodations. (**c**. The current AIC defendants discontinued the agreed accommodation /wedge-pillow in violation of the ADA MONTEZ accommodation resolution as stipulated and agreed upon by the AIC at the hearing before Magistrate

ORIGINAL

Judge Borchers. Defendants refuse to put back ADA accommodation for a wedge-pillow on the Accommodation Resolution. (**d**. Defendants have deviated from the agreed (MONTEZ) Remedial Plan regarding accommodation Resolution Format[s]. Plaintiff will show that the AIC has added other formats regarding accommodations which has caused confusion, mental anguish, and denied ADA accommodations regarding the Plaintiff. Examples will include: "CDOC-Net-Offender Portal; Admission Data Summary format; and Accommodation Resolution format after May of 2011.

The HSA refuses to accommodate plaintiff by continuing to not follow doctors medical orders resulting in a continuing medical condition with a decubitus ulcer . On 1/4/13 and 3/27/13 plaintiff was taken to St. Mary Corbin/ Wound Care Clinic where Dr. Wienpahl ordered either an egg-crate mattress or some type of off-loading mattress [air]. The HAS ignored this order along with other Dr.'s orders according to medical records. This has resulted in eleven (11) months of unnecessary; ongoing pain and suffering due to orders being ignored. Plaintiff has taken temporary provisions regarding this issue by altering the old mattress (dubbing the mattress over) in the most critical area where the mattress has broken down. When this mattress can no longer be used, even in it's altered state,the decubitus will break down all over again. That is why plaintiff believes this issue is critical. Plaintiff is required to have dressing changes every day and is taking narcotic drugs as a result of orders for a mattress not being followed. The direct results of actions taken by Mr. Dave Tessier, Meghan Reed, and Amy Cosner et.al. Resulted in serious medical conditions Dave Tessier elected to disregard medical treatment from Dr. Mark Wienphal, Dr.'s Joseph McCary and Paula Frantz, Chief[s] Medical officers CDOC and three (3) other Dr's of CDOC. An order was given for Plaintiff to be seen at the "Wound Clinic" at St. Mary Corbin. Plaintiff was seen on January 4, 2013 but only after a grievance was filed December 21, 2012. The Wound Clinic also gave orders for an egg-crate mattress and a follow up appointment within 30 days. The follow up appointment was delayed until March 27, 3013. The Wound Clinic has recommended an "egg-create mattress or an "air actuated mattress". The result of not having one has been that Plaintiff has had an open wound that is very slow recovering along with the fact that without a recommended mattress the Plaintiff will again suffer another painful open deciduous ulcer if not issued a mattress for the future. Plaintiff has also had an ongoing order for a cushion/wedge pillow for the past 20 years. This device was brought into the faci8lity in 1993. The device has two purposes. One to elevate legs due to swelling of the legs because of poor circulation . The other is for use to assist in holding him in a somewhat reclined manner because the Plaintiff has a fused hip and knee and is unable to sit up in bed whatsoever. This allows for reading, eating, etc. when in bed. The alternative is to be in a hospital bed with adjustable settings. This item was included in the 2003 Remedial Plan Accommodation and was so indicated on screenings and has been ordered throughout the years by

ORIGINAL

Dr.'s. Defendant's have extensive documentation showing MONTEZ Remedial Plan Medical Screenings that confirm that Defendant requires this item. MONTEZ Remedial Plan states that a disability is "permanent" thus this accommodation is permanent. Planstiff has requested that this item be restored to his Accommodation Resolution and when necessary to replace it with a similar one. DOC has refused to do either. Plaintiff will present extensive documentation confirming the above claims.

Claim #2. Defendants showed "deliberate indifference" to plaintiff's mental health needs that resulted in discrimination toward plaintiff, by not being allowed to advance within the CDOC programing which violated Plaintiff's rights and constituted cruel and unusual punishments, and due process, under the under the Eighth and Fourteenth Amendment's to the United States Constitution.

Claim #2 Supporting Facts:

The Plaintiff will be submitting over 40 pages of Grievances, Letters and Documents as exhibits for this claim. The following facts pertain to: CDOC Sex offender treatment program and parole/ half way house. Plaintiff was first denied treatment with Sex Offender Treatment Program (SOTP ) starting in 1993 and continues with a letter dated April 25, 2011 from Mr. Burl McCullar. He indicated that the application would be "staffed with the treatment team..." He also indicated that plaintiff would perhaps be shipped to FCF for the program. Plaintiff then received a letter date 4/27/11 stating that "...You were not asked to "wave" your right to accommodation[s], but only to consider "opting out" of placement at a designated facility". The notion of this language was that plaintiff would have "a programming opportunity"for SOTP. Plaintiff was then told in the letter that "The AIC exists to ensure that no individual with a disability is excluded from participation or denied the benefits of services, Programs, and activities of the DOC or subjected to discrimination on the basis of disability. Plaintiff then sent a letter to Tom Clements dated 4/27/11 requesting that phase I & II be available to ADA offenders. On May 17, 2001 Meghan A Reed sent a letter suggesting that "The AIC is working diligently to receive ADA approval at other DOC facilities, which should elevate bed space concerns and some placement and programming barriers experienced by disabled class members. On 7/11, 2011 Adrienne Jacobson AIC suggested that "opt-out" provision; Ms. Reed suggested would "provide additional placement options for you". This "opt-out" provision, moving to FCF, would be impossible to the plaintiff because of his disability. Plaintiff was then moved to CTCF due to FLCF being closed. On 2/1/12 plaintiff filled a grievance regarding the fact that plaintiff has not been allowed to participate in SOTP programs which ultimately resulted in not being allowed to advance through the DOC system and gain

ORIGINAL

parole or be placed in a half way house. The grievance officer Anthony A. DeCesaro sent two responses to the Step III grievance. The first attempted to dismiss the grievance because the steps I & II were not attached. This was an attempt to nullify the grievance however the case manager proved that plaintiff did file the grievance. The grievance indicates that I was moved due to my disability pending the shutdown of CTCF' however another letter states I was moved to CTCF for SOTP. The ultimate finding of the Step 3 grievance officer was **" In this time of limited resources there are a limited number of treatment slots available."** (emphases added) Plaintiff contends that he has been denied parole or a halfway house because he has not received any SOTP classes; meantime numerous offenders have completed classes and been paroled. CDOC has changed their explanation regarding when, where, and why he has not been paroled but the genuine reason is the lack of allowing offender to participate in programing "due to expense". Plaintiff was told that by the step III Grievance officer defendant Anthony DeCesaro "[he] may be required to seek treatment as a condition of parole" which would be fine, however there are few if any sex offender(s) being paroled without classes. Since this lawsuit Plaintiff has been told that he would be in the SOTP class which is fine and good but Plaintiff has been denied parole two years because he has been denied SOTP class for the past 19 years of his incarceration, and that the Halfway Houses were not able to accommodate his ADA needs. Plaintiff contends that because the Defendant's have failed to enroll Plaintiff due to cost's he has not been allowed to progress through the penological system through the standard procedures: Halfway House or Parole. According to the Parole Board Record of August 14, 2013 Plaintiff was denied Parole because of the following finding "☐ OTHER: ...has been in DOC for 19 yrs. without txt.". This counteracts what Defendant DeCesaro claims in justifying DOC's failure to have Plaintiff in a treatment for the past 19 years, thus causing a discriminatory action against Plaintiff.

Claim #3. Defendants showed "discrimination" to plaintiff's religious practice resulting in denying the ability to practice his religions freedom of speech and to practice his religion under the First, Eighth and Fourteenth (due processes), Amendments of the Constitution of the United States. "A due process claim under the Fourteenth Amendment can only be maintained where there exists a constitutionally cognizable liberty or property interest with which the state has interfered." *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006). Defendant's also ignored Plaintiff's Rights under the Religious Land Use and Institutional Persons Act of 2000 (hereinafter refereed to as RLUIPA) and The Religious Freedom Restoration Act of 1993-942-U.S.C. 2000.

Claim #3 Supporting Facts:

ORIGINAL

1.

Plaintiff has not been permitted to practice The Roman Catholic faith to it's fullest extent. Defendant's claim they meet all "necessary requirements" and that according to their faith group advisers the Def indents deem that Plaintiff is allowed all basic items and practices needed for conducting Mass or any other meeting.

(1. Administrative Regulations call for the ability of inmates to practice their faith without a Volunteer present if there is none available. Other faith groups currently are allowed to meet regardless of having a volunteer or not. Plaintiff is now restricted in being allowed to participate with other Catholics when a Volunteer is not available. Defendants clam that the Archdiocese of Denver and the Diocese of Pueblo, "do not allow for Catholic services to be held without the presence of a CDOC approved and trained priest, deacon, or lay-person from outside the institution ". NOTE: No Bishop or Priest would say that the Liturgy of the Word could not be held by a group of believing Catholics. There would be no need for a Priest, deacon, or lay[person. Defendants are twisting the facts to suit their agenda.

(2. Plaintiff has been denied the use of Pascal and Votive Candles.

(3. Plaintiff has been denied the use of Alter Candles.

(4. Plaintiff has been denied access attending Catholic service when on restrictive privilege.

(5. Plaintiff has been denied proper Alter cloths according to the season.

(6. Plaintiff has been denied Chimes during Mass for elevation.

(7. Plaintiff has been denied the use of an Advent Wreath during the season.

(8. Plaintiff has been denied the use of Palms on Palm Sunday and retaining them for the each year.

(9. Plaintiff has been denied receiving donated Scapulars,Rosary[s] personally issued Holy Water and other directly donated items.

(10. Plaintiff has requested that AR 800-1 attachment E. be revamped to allow himself and other Catholic offenders the ability to practice their religious beliefs "to the fullest extent" in accordance to (RLUIPA). Defendant's have rejected this request stating that "their expert adviser" has determined that the requests are "not necessary". The Plaintiff filed many requests for issues named above by submitting a Form AR 800-1 (J), however the forms were "lost, misplaced" or ignored for well over 2 years.

Plaintiff will be filing numerous attachments regarding this claim.

ORIGINAL