IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01192-RBJ-CBS

DAVID GUY BRYAN,
    Plaintiff,
v.

DAVID TESSIER[1],
    Defendant.

---

RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

---

Magistrate Judge Shaffer

This matter comes before the court on Defendants' Motion to Dismiss (doc. #28), filed on November 12, 2013. Also before the court is Plaintiff's Motion for Temporary Restraining Order (doc #34), filed on January 16, 2014. These motions were referred to the Magistrate Judge pursuant to the Order of Reference dated September 12, 2013 (doc. #18). This court has carefully considered the motions and related briefing, the entire case file, the comments offered by the parties during the November 13, 2013 Preliminary Scheduling Conference, and applicable case law. For the following reasons, I recommend that the Motion to Dismiss be granted in part and denied in part, and the Motion for Temporary Restraining Order be denied.

**BACKGROUND**

Mr. Bryan, a *pro se* prisoner incarcerated at the Colorado Territorial Correctional Facility ("CTCF") in Canon City, Colorado, filed this lawsuit pursuant to 42 U.S.C. § 1983 claiming that Defendant Tessier withheld certain medical equipment thereby violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12102 *et seq.*; the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq*; and Plaintiff's

---

[1] Brian Hoffmann is substituted for David Tessier in his official capacity; Defendant Tessier remains in the lawsuit in his individual capacity.

Eighth Amendment right against cruel and unusual punishment. Defendant Tessier was the Health Services Administrator at CTCF when Plaintiff was transferred to that facility, and he held that position until Mr. Hoffmann succeeded him sometime after the filing of this lawsuit. As successor, Mr. Hoffmann is substituted for Mr. Tessier in the official capacity claims that remain in this action. *See* Fed. R. Civ. P. 25(d). Plaintiff seeks declaratory relief, injunctive relief, and monetary relief in an unspecified amount.[2]

Plaintiff is a member of the ADA class-action suit filed by Colorado prisoners, *Montez v. Owens,* No. 92–CV–00870, which resulted in a "Remedial Plan" to bring Colorado's prison system into compliance with the ADA. Plaintiff has a mobility disability under the ADA and suffers from a host of health issues, including poor circulation, compromised mobility as a result of a fused hip and partially fused knee, and a susceptibility to ulcers in the area where he received a skin graft. Plaintiff claims the Remedial Plan provided that he receive certain ADA accommodations appropriate for his health issues; specifically, he was allowed a wedge pillow to improve his circulation while in bed and an egg crate mattress to relieve pressure on the area predisposed to ulcers.[3] Plaintiff also alleges that during the last twenty years at least four doctors, three of whom are or were affiliated with the Colorado Department of Corrections ("CDOC"), ordered or recommended his use of an egg crate mattress and wedge pillow.

Plaintiff was transferred from Ft. Lyon Correctional Facility to CTCF on April 28, 2011. Plaintiff alleges that prison officials confiscated his egg crate mattress during the transfer despite the ADA accommodation. The mattress was replaced shortly after Plaintiff's arrival at CTCF; however, on May 10, 2011, ADA Inmate Coordinator Julie Russel revised his list of ADA accommodations and permitted medical devices to alter "Egg-Crate mattress, Wedge Pillow, Extra long bed and Desk in cell that is not attached to the wall" to read as "longer bed with bedding," thus removing the mattress and the pillow

---

[2] Specifically, Plaintiff asks for declaratory judgment that Defendant Tessier has violated his constitutional rights, an order enforcing Plaintiff's ADA accommodations, and compensatory and punitive damages.

[3] To the extent Plaintiff seeks to enforce the Remedial Plan by claiming he has not received certain accommodations, this court lacks jurisdiction to grant such relief. Furthermore, Plaintiff apparently has received all he is entitled to pursuant to the Remedial Plan. (*See* Doc. #28-1 at p.2) ("[Plaintiff] was awarded money, and that has been paid by Defendants. The Special Master did not order Defendants to provide [Plaintiff] with any medical items or other accommodations.").

2

from the list (doc. #31).[4] Plaintiff alleges he has not since received an egg crate mattress without a prison official later confiscating it.[5] Plaintiff claims he did not file a grievance at the time Ms. Russel revised the accommodation list because his egg crate mattress had recently been replaced; and he was not injured as a result of the stricken accommodation until September 2012, when Defendant Tessier allegedly refused to allow a replacement mattress and Plaintiff developed a painful decubitus ulcer as a result.

Plaintiff filed his Complaint on May 6, 2013 (doc. #1), along with a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 (doc. #3). Plaintiff thereafter paid the filing fee in full and the court denied his § 1915 motion as moot (doc. # 7). On May 20, 2013, the court ordered Plaintiff to file an amended complaint that complied with Fed. R. Civ. P. 8. *Id.* Plaintiff thereafter filed two requests for an extension of time to file an amended complaint (doc. #8 and #10), both of which the court granted (doc. #9 and #11).[6] Plaintiff filed an Amended Complaint on August 23, 2013 (doc. #12) stating three claims for relief. On August 29, 2013, Plaintiff filed a motion requesting appointment of counsel (doc. #13), which the court denied without prejudice (doc. #14). On September 6, 2013, the court dismissed Plaintiff's second and third claims as legally frivolous, and dismissed all defendants other than Mr. Tessier from the action, finding that Mr. Tessier was the only defendant against whom Plaintiff had alleged personal participation in a constitution violation (doc. #15). The court also determined that to the extent Plaintiff asserted a violation of the ADA and Rehabilitation Act in his first claim, it would be construed as a claim against Defendant Tessier in his official capacity. *Id.*

Defendant waived service on September 12, 2013. Plaintiff requested an extension of time to respond to the court's September 6 order dismissing two of Plaintiff's claims and most of the defendants (doc. #22), which this court denied as unnecessary (doc. #27). Defendant subsequently filed a Motion to

---

[4] Defendants claim that ADA accommodations and approved medical devices were listed together until recently, and that Plaintiff had been allowed the use of an egg crate mattress and wedge pillow as approved medical devices rather than as ADA accommodations.
[5] Plaintiff does not claim that the wedge pillow was confiscated or otherwise denied to him; he asks only that the item be reinstated on his list of accommodations.
[6] However, the court denied Plaintiff's requests that the court order the CTCF library to schedule Plaintiff's visits so that they would not conflict with his medical appointments (doc. # 10 and #11).

Dismiss on November 12, 2013 (doc. #28). This court held a Preliminary Scheduling Conference the following day, at which the undersigned directed Plaintiff to submit a response to the Motion to Dismiss by December 13, 2013, and stayed discovery pending resolution of the motion (doc. #30). On December 17, 2013, Plaintiff filed a response to the Motion to Dismiss (doc. #31) accompanied by over sixty pages of exhibits (doc. #32). Defendant Hoffmann was then substituted for Defendant Tessier as to the official capacity claims and Defendants filed a joint reply on December 31, 2013 (doc. #33).

Plaintiff filed a Motion for Temporary Restraining Order on January 16, 2014 (doc. #34), asking the court to order CTCF officials to replace his egg crate mattress and enjoin them from requiring Plaintiff to stand during the prison's "count." Plaintiff subsequently filed a second motion requesting appointment of counsel (doc. #36), and a second response to Defendants' Motion to Dismiss (doc. #37). This court again denied Plaintiff's request for counsel (doc. #39). Defendants requested and were granted an extension of time to respond to Plaintiff's Motion for Temporary Restraining Order (doc. #40 and #42), and filed their Response on February 14, 2014 (doc. #43). Plaintiff filed a Reply in support of his Motion for Temporary Restraining Order on March 5, 2014 (doc. #44).

## STANDARD OF REVIEW

A.   **Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). As the United States Tenth Circuit Court of Appeals explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." "The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp.*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Because Mr. Bryan is appearing *pro se*, the court "review[s] [his] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a court may not assume that a plaintiff can prove facts that he has not alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *See Gallagher v. Shelton*, 587 F.3d 1063, 1067 (10th Cir. 2009) ("[Court's] role is not to act as [*pro se* litigant's] advocate"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues") (internal citation omitted). Furthermore, the court may, at any time and of its own accord, dismiss any action that is frivolous or which fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Fed. R. Civ. P. 12(b)(6); *Hall v. Bellmon*, 935 F.2d 1106, 1108-10 (10th Cir. 1991).

**B.     Injunctive Relief**

To succeed on a motion for a temporary restraining order or preliminary injunction under Fed. R. Civ. P. 65, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003) (internal quotations omitted). Granting such "drastic relief," *United States ex. rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989), "is the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

Three types of preliminary injunctions are disfavored: injunctions that alter the status quo; mandatory injunctions; and injunctions that afford the movant all the relief he could recover following a full trial on the merits. *Fundamentalist Church of Jesus Christ of Latter–Day Saints v. Horne,* 698 F.3d 1295, 1301 (10th Cir. 2012). In seeking these types of relief, the movant must show that the factors cited above "weigh heavily and compellingly in [his] favor." *Id.*  Finally, Title 18 U.S.C. § 3626(a)(2) requires that, "[i]n any civil action with respect to prison conditions," any "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."

**ANALYSIS**

**A.     Motion to Dismiss**

    1.     Eighth Amendment Violation

Title 42 U.S.C. § 1983 allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988).     Mr. Bryan alleges that Defendant Tessier violated his right against cruel and unusual punishment under the Eighth Amendment by preventing necessary medical care. "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994)) (citation omitted). The Supreme Court has instructed that the Eighth Amendment prohibits "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976). Prison officials may be liable for an Eighth Amendment violation for "indifference manifested in their response to a prisoner's needs or by intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estate of Booker v. Gomez*, 745 F.3d 405 (10th Cir. 2014). "[D]elays in treating painful medical conditions that are not life-threatening can support Eighth Amendment claims." *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997); *see also Boretti v. Wiscomb*, 930 F.3d 1150, 1153-55 (6th Cir. 1991) ("[A] prisoner who suffers pain needlessly when relief is readily available has a cause of action against those whose deliberate indifference is the cause of his suffering") (internal citations omitted).

"The test for constitutional liability of prison officials involves both an objective and a subjective component." *Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citations omitted). First, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer,* 511 U.S. at 834). "[A] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

7

person would easily recognize the necessity for a doctor's attention." *Mata*, 427 F.3d at 751 (internal quotations and citations omitted). Second, under the subjective component, the prisoner must establish deliberate indifference to his serious medical needs by "present[ing] evidence of the prison official's culpable state of mind." *Id.* (internal citation omitted). The subjective standard requires a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and further citations omitted). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). However, "'an inadvertent failure to provide adequate medical care' does not rise to a constitutional violation." *Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Estelle,* 429 U.S. at 105–06).

Defendants argue that Plaintiff's Amended Complaint should be dismissed for a litany of reasons: his § 1983 claim is barred by the applicable statute of limitations; he fails to state a claim for violation of the ADA and Rehabilitation Act; Defendant Hoffmann is entitled to Eleventh Amendment immunity; Plaintiff failed to allege that Defendant Tessier personally participated in a constitutional violation; Plaintiff fails to state a claim for an Eighth Amendment violation; and Defendant Tessier is entitled to qualified immunity (doc. #28). At this stage in the litigation this court must "accept as true all well-pleaded factual allegations" and view those allegations "in the light most favorable to the plaintiff." *Casanova*, 595 F.3d at 1124. Accordingly, and for the reasons stated below, this court recommends that Defendants' Motion to Dismiss be denied in part and granted in part.[7]

---

[7] This court is mindful that Plaintiff improperly attached sixty pages of exhibits to his Response to Motion to Dismiss, and considers only the allegations contained in Plaintiff's Amended Complaint, Response to Motion to Dismiss, Motion for Temporary Restraining Order, and Reply in support of Motion for Temporary Restraining Order, and the exhibits attached to Defendant's Response to Motion for Temporary Restraining Order.

Plaintiff entered the custody of CDOC in 1993 and alleges that CDOC physicians McGarry, Cabling, and Franz ordered and/or recommended Plaintiff's use of an egg crate mattress over a span of ten years, resulting in Plaintiff receiving a new mattress every year until 2012. Plaintiff alleges that when he did not receive a replacement mattress in the fall of 2012, he developed a painful and debilitating decubitus ulcer that required treatment at St. Mary Corbin's Wound Clinic. Clinician Savannah Martinez attended to Plaintiff, and wrote in her assessment notes:

> Explained to [patient] we no longer recommend egg crate cushions as they can trap moisture and cause pressure ulcers. Recommended an overlay mattress or some type of off-loading mattress to help resolve wound. Expressed to [patient] that he must continue to off-load pressure from coccyx by turning frequently or propping up hip with wedge or pillow." (Doc. #43-3 at p. 18).

Plaintiff returned to the hospital's wound clinic twice in early 2013 and was treated by Dr. Mark Wienpahl, who recommended use of "either an egg-crate mattress or some type of off-loading mattress." (Doc. #12). In July 2013, Plaintiff received treatment from CDOC physician Cynthia Ireland, whose assessment read, "If we can get [the egg crate mattress] replaced, I think we can avoid worsening the current ulcer(s), and avoid the need for an air mattress." (Doc. #34 at Ex. 10). Plaintiff also alleges that Dr. Ireland authorized an egg crate mattress for his permanent use. *See id.* at Ex. 72.[8] Accepting these allegations as true, Plaintiff has demonstrated a sufficiently serious medical need.

Plaintiff further alleges that Defendant Tessier personally instructed a CTCF nurse to cancel the replacement egg crate mattress that was ordered in September 2012; and told Plaintiff, "I will see to it that your ADA accommodation will have the items removed and that you will not be issued these items" (doc. #31), despite the fact that Defendant Tessier was aware of Plaintiff's skin condition and had seen the decubitus ulcer. Though somewhat undeveloped, these allegations taken as true satisfy the requirement of

---

[8] Mr. Hoffmann's affidavit, offered in support of Defendants' Response to Plaintiff's Motion for Temporary Restraining Order, acknowledges that Dr. Ireland ordered the egg crate mattress for Plaintiff, but states that she is a "temporary employee provider." (Doc. #43-3 at p.4). The significance of whether a temporary or permanent CDOC doctor ordered the mattress is not entirely clear; what matters at this stage in the proceedings is simply whether a CDOC doctor ordered an egg crate mattress for Plaintiff.

personal involvement and deliberate indifference to a serious medical need. *See Farmer*, 511 U.S. at 847 (Holding a prison official acts with deliberate indifference when he or she knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.").

Finally, Plaintiff alleges that his injury occurred in September 2012 when Defendant Tessier canceled the order for the egg crate mattress, and the decubitus ulcer developed as a result of Defendant's interference. Plaintiff also alleges that Defendant ignored doctors' orders given in January, March, and July of 2013. Accepting these allegations as true, the constitutional violation did not occur until September 2012, at the earliest. *See Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis of his action."). Therefore, Plaintiff was well within the two-year statute of limitations when he filed his Complaint on May 6, 2013.

Defendants argue that Plaintiff's grievance is in fact a mere difference of medical opinion and that Plaintiff does not have a constitutional right to specific medical treatment. Defendants claim doctors informed Plaintiff that egg crate mattresses are detrimental to his condition, and in any event, Plaintiff received "special bedding," which constitutes adequate treatment. Defendants also cite Administrative Regulations that restrict the use of egg crate mattresses outside of the infirmary.[9]

Defendants' arguments are not convincing for several reasons. Clinician Martinez noted that egg crate mattresses are no longer beneficial for ulcers, but recommended that Plaintiff use an air mattress or other load-bearing mattress to accommodate the ulcer. Plaintiff appears to have received special bedding, but only in the form of a "longer bed with bedding." (Doc. #43-3 at p.2). Plaintiff is over six feet tall and has an independent need for a customized bed. Moreover, Defendants do not explain how a longer bed is

---

[9] "[M]edical supplies, such as an egg crate mattress, are limited for use by offenders who are confined to an infirmary…" *See* Doc. #43-3 at p. 10 (quoting Administrative Regulation 700-34(IV)(B)(2-3); *see also* Doc. #43-2 at p. 15 ("Egg crate mattresses are for medically necessary use only in infirmaries and shall not be issued to offenders at any other CDOC facility") (quoting Administrative Regulation 850-05(IV)(I)(1).

a substitute for a load-bearing mattress. Defendant Hoffmann states in his affidavit that he does "*not* provide medical care" (doc. #43-4 at p. 1), yet then opines, "Mr. Bryan does *not* meet the clinical standard to be issued [an egg crate mattress]." (Doc. #43-4 at p. 4). Furthermore, Defendant Hoffmann acknowledges, "the determination regarding whether [the egg crate mattress] is medically appropriate for [Plaintiff], would be made by a medical clinician and approved by the [Chief Medical Officer]." (Doc. #43-4 at p. 4). Yet, several doctors have determined that an off-loading mattress of some type is appropriate for Plaintiff. Finally, while Administrative Regulations may forbid Plaintiff's use of an egg crate mattress in his cell, Defendants have provided no explanation for why Plaintiff has not received a substitute accommodation, such as an air mattress. Defendants rely exclusively on the fact that the Regulations ban the use of egg crate mattresses in the general population and ignore that CDOC and outside physicians instructed that Plaintiff use a load-bearing mattress of some kind. Accordingly, this court finds that Plaintiff has stated a § 1983 claim against Defendants for violation of his Eighth Amendment right with regard to the egg crate mattress.

Plaintiff has not stated a violation of his Eighth Amendment right with regard to the wedge pillow, however. Plaintiff did not allege that medical doctors recommended he use a wedge pillow, or that Defendants acted with deliberate indifference in contravening doctors' orders.

Nor has Plaintiff stated a claim for violation of the ADA or Rehabilitation Act. The Tenth Circuit has held that neither Act provides a private right of action to challenge medical treatment. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005). To bring an action under the ADA, Plaintiff would have to show that he was qualified to receive the benefits he sought and was denied those benefits "solely by reason of disability." *Id.* Plaintiff has made no such showing here.

    2.    <u>Eleventh Amendment and Qualified Immunity</u>

Plaintiff sued Defendant Tessier in his individual and official capacity. As successor to Defendant Tessier, Defendant Hoffmann is entitled to Eleventh Amendment immunity in his official capacity. "[A]n

11

official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, (1985)). The Eleventh Amendment bars suits against a state by its own citizens, and immunizes state defendants sued in their official capacities from liability for damages or equitable relief. *See Johns v. Stuart*, 57 F.3d 1544, 1552 (10th Cir. 1995). Furthermore, state employees acting in their official capacities are not "persons" subject to suit under § 1983. *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994). Accordingly, Plaintiff cannot pursue a § 1983 claim for damages or declaratory relief against Defendant Hoffmann in his official capacity. The Eleventh Amendment "does not, however, bar a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law." *Johns*, 57 F.3d at 1552. Therefore, Plaintiff may seek prospective injunctive relief enjoining Defendant Hoffmann from violating a constitutional right, should the court find that such a violation has occurred.[10]

In light of the recommendation that Plaintiff has stated an Eighth Amendment claim, this court finds that Defendant Tessier's defense of qualified immunity is premature at this time. "State officers sued in their individual capacities are immune from liability for exercises of discretionary authority unless their conduct 'violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Duncan*, 15 F.3d at 992 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (internal citation omitted). In addition to questioning whether Plaintiff has alleged a violation of his constitutional right, this court must ask "whether the state of the law at the time gives officials fair warning that their conduct is unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002) (quoting *Harlow*, 457 U.S. at 818). The Eighth Amendment's protection against deliberate indifference to serious medical needs of prisoners has been the recognized standard for decades. *See Estelle,* 429 U.S. at 104. If Plaintiff's allegations are true, he has stated a colorable violation of his constitutional right. Defendant Tessier can better raise the defense of qualified immunity in a motion for summary judgment.

---

[10] To the extent Plaintiff wishes to add Mr. Hoffmann to this lawsuit in his individual capacity (*see* doc. #37), Plaintiff must file a separate motion pursuant to Fed. R. Civ. P. 20 asking for the court's leave.

In summary, this court recommends that the Motion to Dismiss be denied as to Plaintiff's Eighth Amendment claim based on Defendant Tessier's interference with the egg crate mattress; and granted as to Plaintiff's Eighth Amendment claim based on interference with the wedge pillow, ADA and Rehabilitation Act claims, and request for monetary and declaratory relief as to Defendant Hoffmann in his official capacity.

B.    **Temporary Restraining Order**

Plaintiff filed a Motion for Temporary Restraining Order (doc. #34) on January 16, 2014. Plaintiff alleges therein that pursuant to Dr. Ireland's orders, an egg crate mattress was issued to him on August 2, 2013, several months after Plaintiff filed this lawsuit. Plaintiff also alleges that correctional officers Valvez and Kenley confiscated the mattress at the direction of Defendant Hoffmann, and asks that this court order the egg crate mattress be replaced. Plaintiff further claims that Defendant Hoffmann instructed prison guards that Plaintiff must stand during the routine count of prisoners, in violation of an ADA accommodation that he not be required to stand for long periods; Plaintiff seeks enforcement of this accommodation. Finally, Plaintiff asks the court to enjoin CDOC employees from generally interfering with his ADA accommodations and medical orders.

Defendants filed a joint response to the Motion on February 14, 2014 (doc. #43). Plaintiff filed a reply on March 5, 2014 (doc. #44). In light of Defendants' response, this court recommends treating Plaintiff's motion as one for a preliminary injunction. *See generally* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2951 (3d ed.) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for a preliminary injunction and the proceeding is not subject to any special requirements.").

A party seeking preliminary injunctive relief must satisfy four factors: a likelihood of success on the merits; a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief;

13

that the balance of equities tips in the movant's favor; and that the injunction is in the public interest. *RoDa Drilling Co.*, 552 F.3d at 1208.  Furthermore, Plaintiff must show that these factors "weigh heavily and compellingly in [his] favor," because Plaintiff is seeking a mandatory injunction and the same relief he would be entitled to should he prevail on the merits. *See Fundamentalist Church of Jesus Christ of Latter–Day Saints*, 698 F.3d at 1301.

Plaintiff may survive Defendants' Motion to Dismiss as to an Eighth Amendment violation based on allegations regarding the egg crate mattress; however, Plaintiff's motion fails to sufficiently address the remaining three factors.  Of particular importance, Plaintiff fails to allege he is on the brink of suffering irreparable harm as a result of Defendant Hoffmann's actions. *See Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) ("To constitute irreparable harm, an injury must be certain, great, actual and not theoretical") (internal quotations and citations omitted).  The grounds for injunctive relief "in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (internal citations omitted).  Plaintiff's motion merely lists the requested relief.  Plaintiff expands upon the basis for relief in his reply; however, the fact that he is suffering from a painful wound does not constitute an allegation that he will suffer irreparable harm before this lawsuit is resolved.  Plaintiff has also failed to address the balance of equities or public interest, or show that any of the factors weigh heavily or compellingly in his favor, as is required for the type of injunction he requests.

Plaintiff similarly falls short of satisfying the heightened standard for a mandatory injunction allowing him to sit or recline during the prison's count.  As an initial matter, the relief Plaintiff requests is unrelated to the pending action, and Plaintiff has not alleged that standing during the count violates his constitutional rights.  Plaintiff presented evidence of medical orders stating he should not stand for periods exceeding six hours but Plaintiff has not alleged that the count lasts beyond six hours.  Moreover,

Plaintiff has not alleged he faces irreparable harm, that the balance of equities tips in his favor, or that such an injunction is in the public interest.

Finally, Plaintiff's requested relief that the court enjoin CDOC employees from tampering with his ADA accommodations or disregarding medical orders is too broad to satisfy § 3626(a)(2). *See Stephens v. Jones*, 494 F. App'x 906, 911-12 (10th Cir. 2012) (affirming district court's ruling that requested injunctive relief to prevent prison officials "from taking actions that will result in irreparable harm to [prisoner's] right and ability to litigate actions before the Courts" violated the statutory requirements of § 3626(a)(2)).[11]  Accordingly, I recommend that Plaintiff's Motion for Temporary Restraining Order be denied.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that Defendants' Motion to Dismiss (doc. #28) be GRANTED in part and DENIED in part, and that Plaintiff's Motion for Temporary Restraining Order (doc. #34) be DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th

---

[11] A copy of this unpublished case is attached to this Recommendation.

Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 28th day of May, 2014.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge